# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

CARA PAYNE,

      Plaintiff,

vs.                                                                                            No. CIV 16-0312 JB/GJF

LEE WILDER; MAYFRITZ BUCAG and
DAVID CEBALLES,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) the Plaintiff's Motion for Default Judgment, filed November 29, 2016 (Doc. 26)("Motion for Default Judgment"); and (ii) Defendant Mayfritz Bucag's Motion to Set aside Entry of Default, filed December 29, 2016 (Doc. 35)("Motion to Set Aside"). The Court held a hearing on June 5, 2017. The primary issues are: (i) whether the Court should set aside the Clerk's Entry of Default, filed November 16, 2016 (Doc. 22)("Clerk's Entry of Default"), under rule 55(c) of the Federal Rules of Civil Procedure, because Defendant Mayfritz Bucag has shown good cause to set aside the Clerk's Entry of Default; and (ii) whether the Court should enter default judgment as to Bucag under rule 55(b) of the Federal Rules of Civil Procedure, because Bucag has been so unresponsive that he has prejudicially halted the adversarial process. The Court concludes that Bucag attempted to monitor and manage his defense in this case, and that, although he could have taken different routes to becoming an active participant in this case, he is nonetheless now an active participant in his defense. The Court will, accordingly, deny the Motion for Default Judgment and grant the Motion to Set Aside.

## FACTUAL BACKGROUND

The Court draws its recitation of the relevant facts from Plaintiff Cara Payne's Amended Complaint for Damages and Petition for Declaratory and Injunctive Relief, filed April 19, 2016 (Doc. 1-2)("Complaint").  On July 8, 2015, Defendant Lee Wilder, a law enforcement officer in Otero County, New Mexico, stopped and seized Payne in Alamogordo, New Mexico, for driving with a suspended license.  See Complaint ¶ 7, at 1.  Wilder represented that he was conducting a child abuse investigation, forced Payne to do a field sobriety test, and attempted to force Payne to allow him to search a home where Payne was staying as a house sitter for the owner of the home.  See Complaint ¶¶ 7-11, at 2-3.  Wilder -- Payne alleges -- did not have reasonable suspicion to support the notion that Payne was intoxicated.  See Complaint ¶¶ 8-9, at 2. Regarding the home search, Payne refused to allow the search, and told Wilder that she had previously been under investigation by the State of New Mexico Children, Youth, and Families Department ("CYFD"), but that the investigation did not support allegations of abuse.  See Complaint ¶¶ 10-11, at 2-3.  Upon her refusal, Wilder contacted Bucag, a CYFD investigator, who then contacted Payne's ex-husband and ordered him to not allow Payne custody of their children.  See Complaint ¶¶ 12-14, at 3.  Payne did not have custody or visitation rights after this traffic stop, as a consequence of Bucag's directive, despite having the right to custody and visitation.  See Complaint ¶¶ 15-16, at 3.

Wilder and Bucag then petitioned the district attorney's office in Otero County to file criminal charges against Payne for refusing to allow the search of a house where she was staying as a house sitter for the home's owner.  See Complaint ¶ 18, at 4.  In particular, the criminal charges would flow pursuant to N.M. Stat. Ann. § 30-6-4, which relates to obstruction of reporting or investigating child abuse or neglect.  See Complaint ¶ 19, at 4.  Wilder expects that

charges will be filed against Payne.  See Complaint ¶ 20, at 4.  Defendant David Ceballes was the District Attorney for Otero County when Payne filed her Complaint.  See Complaint ¶ 6, at 2.

## PROCEDURAL BACKGROUND

Payne originally filed her Complaint in the Twelfth Judicial District Court, County of Otero, State of New Mexico.  See Complaint at 1.  Wilder removed the case to federal court on April 19, 2016.  See Notice of Removal, filed April 19, 2016 (Doc. 1).  Payne alleges that Wilder and Bucag have committed a violation of her due process rights under the Constitution of the United States of America and under the Constitution of the State of New Mexico.  See Complaint ¶¶ 22-32, at 4-6.  Payne also alleges that § 30-6-4 is unconstitutional, because it violates the Fourth Amendment to the Constitution of the United States of America and Article II, § 10 of the New Mexico Constitution, supporting her request for injunctive and declaratory relief regarding Ceballes' potential prosecution of her.  See Complaint ¶ 21, at 4.  The Court has concluded that the allegations in the Complaint implicating Ceballes were not yet ripe for the Court's review, and has thereby granted Defendant David Ceballes [sic] Motion and Memorandum to Dismiss Plaintiff's Declaratory and Injunctive Relief Claims, filed September 27, 2016 (Doc. 10)("Motion to Dismiss"), which requested that the Court dismiss Payne's allegations against Ceballes, see Memorandum Opinion and Order at 1, filed January 3, 2017 (Doc. 36)("Ripeness MOO").

1.      **The Clerk's Entry of Default.**

Matthew Dykman, the Clerk of Court for the United States District Court for the District of New Mexico, entered the default of Bucag on November 16, 2016.  See Clerk's Entry of Default at 1.  The Clerk's Entry of Default states: "It appearing from the files and records of this Court as of November 16, 2016, that the defendant, Mayfritz Bucag, against whom judgment for

affirmative relief is sought in this action, has failed to plead or otherwise defend as provided by the Federal Rules of Civil Procedure." Clerk's Entry of Default at 1. Mr. Dykman, accordingly, entered the default of Bucag "pursuant to the requirements of Rule 55(a)." Clerk's Entry of Default at 1.

**2.      The Motion for Default Judgment.**

Payne filed the Motion for Default Judgment, because, "[o]n November 16, 2016, the Court Clerk entered Bucag's default." Motion for Default Judgment at 1. Payne argues that, subsequent to the Clerk's Entry of Default, "[t]here has still been no answer or response from Defendant Bucag." Motion for Default Judgment at 1. Payne thus requests "that the Court enter a default judgment on the issue of liability and that the Court find[] the allegations in the complaint admitted by Defendant." Motion for Default Judgment at 1.

**3.      The Response.**

Bucag responded to the Motion for Default Judgment with Defendant Mayfritz Bucag's Response to Plaintiff's Motion for Default Judgment, filed December 16, 2016 (Doc. 32)("First Response"), and Defendant Mayfritz Bucag's Amended Response to Plaintiff's Motion for Default Judgment, filed December 27, 2016 (Doc. 34)("Response"). In the Response, Bucag explains:

> On December 27, 2016, prior to the filing of Plaintiffs Reply, Plaintiffs counsel informed counsel for Defendant Bucag of unintentional errors contained in the original Response. As a result of this notification, counsel for Defendant Bucag immediately reviewed the response and indeed noted unintentional errors and thus, prepared an amended response, corrected the date the clerk entered default, corrected any confusion it may have created regarding entry of default by the clerk versus entry of default judgment by the Court, and noted that since the filing of the original response, no stipulation between the parties have been reached.

Response at 1 n.1. The Court, accordingly, will consider Bucag's Response as her operative briefing, as that appears to be the procedure which Bucag desires. See Response at 1 n.1. Bucag

first explains that rule 55 "authorizes the entry of default judgment when a defendant fails 'to plead or otherwise defend' in accordance with the Rules."  Response at 1 (quoting United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982)).  Further, the Response argues, "[a]fter the entry of default, the non-defaulting party may move the court for 'default judgment'" under rule 55(b).  Response at 1-2 (emphasis in original)(quoting Tweedy v. RCAM Title Loans, LLC, 611 F. Supp. 2d 603, 605 (W.D. Va. 2009)(Moon, J.)).  Here, Bucag maintains that the Court must deny the Motion for Default Judgment under rule 55 and next provides the case's facts for the Court.  See Response at 2.

Bucag states that, at the time of the incident giving rise to Payne's Complaint, he "was an employee of New Mexico Department of Children, Youth, and Families."  Response at 2.  Bucag -- who resides in Seattle, Washington -- explains that, when Payne filed suit against him on April 13, 2016, he was not served until September 13, 2016, which was five months after Payne filed the Complaint.  See Response at 2.  Bucag then explains that he retained counsel to defend these charges on December 9, 2016, shortly after the Clerk entered the Clerk's Entry of Default was entered on November 16, 2016.  See Response at 3.  Regarding answering Payne's Complaint, Bucag states that he answered on December 12, 2016, and on "December 13, 2016, . . . served his initial disclosures, and on December 14, 2016, . . . served his First Set of Discovery Requests to Plaintiff."  Response at 3.  Bucag also notes that the other Defendants, Ceballes and Wilder, had already answered Payne's Complaint.  See  Response at 3.  Accordingly, Bucag argues that there

> will be no prejudice to Plaintiff by the late filing of Defendant Bucag's Answer as Defendant's late-filed answer has caused no delay in moving this case forward. Defendant's Answer raises the same affirmative defenses to Plaintiff's Amended Complaint as were raised in Defendant Wilder's Answer to Plaintiffs Amended Complaint, leaving the factual and legal issues the same.

Response at 3-4.  Bucag also alerts the Court that he had been hoping to reach an agreement with Payne that would let him set aside the Clerk's Entry of Default, but that such an agreement was not reached when he filed the Response.  See Response at 4.

Bucag then requests that the Court not enter default judgment in this case first by reference to Tenth Circuit case law which disfavors default judgments.  See Response at 4 (citing, e.g., Cessna Finance Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d 1442. 1444 (10th Cir. 1983)("Strong policies favor resolution of disputes on their merits: the default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party.")(alterations and internal quotation marks omitted)).  Bucag then describes a case from the United States District Court for the Northern District of Indiana, where the district court "denied plaintiffs' motion for default judgment," by considering a number of factors in that litigation, "including whether there is a material issue of fact, whether the default is largely technical, whether the plaintiffs were substantially prejudiced and how harsh an effect a default judgment might have."  Response at 4-5 (citing Laporte Savings Bank v. Schmitt, 2012 WL 733691 (N.D. Ind. 2012)).  Bucag also explains that the district court in that case was operating with respect to the notion that "its circuit favored a policy of promoting trial based on the merits rather than default judgment."  Response at 4.  In light of the Tenth Circuit's policy disfavoring default judgment, Bucag avers:

> Given the circumstances of this case, Plaintiff's Motion for Default Judgment should be denied.  The adversarial process has not been halted, Defendant Bucag has denied the allegations in Plaintiff's Amended Complaint and raised affirmative defenses, and Plaintiff has not been prejudiced as a result of Defendant Bucag's delayed answer to Plaintiff's Amended Complaint.  Plaintiff has not missed an opportunity to undertake discovery nor does any discovery have to be repeated as a result of Defendant Bucag's delayed answer.

Response at 5.  Bucag last reiterates that his "failure to timely answer Plaintiffs Amended

Complaint was not the result of or a willful disregard or mal-intent towards the Court, Plaintiff, or the rules. Once counsel was assigned, an immediate answer was filed, and Defendant Bucag immediately began defending the case and conducting discovery." Response at 6.

**4.     The Reply.**

In support of the Motion for Default Judgment, Payne filed the Plaintiff's Reply to Defendant Bucag's Response to Plaintiff's Motion for Default Judgment, filed December 27, 2016 (Doc. 33)("Reply"). The Reply responded to Bucag's First Response, but the Court will assume that Payne considered the amendments in the Response insignificant enough to not warrant an amended reply. See Email from Miguel Garcia to Carla Williams (dated December 27, 2016), filed December 27, 2016 (Doc. 34-1)(making no objection on Payne's behalf to Bucag's filing of the Response, which makes amendments to the First Response, even though she had already filed the Reply, indicating that she would make another reply to the Response at a later date). Payne's Reply argues first that Bucag has not filed a motion to set aside the Clerk's Entry of Default, making his arguments against the Motion for Default Judgment moot. See Reply at 1. Payne also suggests that "the issue of the entry of default is long foregone in this case. The only issue to be decided is whether judgment should be entered . . . ." Reply at 2. Payne concludes by maintaining the Court should enter a default judgment. See Reply at 2.

**5.     The Motion to Set Aside.**

On December 29, 2016, Bucag filed the Motion to Set Aside, seeking to set aside the Clerk's Entry of Default. See Motion to Set Aside at 1. The Motion to Set Aside restates much of the factual background and argument Bucag makes already in his Response to Payne's Motion for Default Judgment. Compare Motion to Set Aside at 1-3, with Response at 1-6. Regarding the procedural history of the case, Bucag informs the Court that after he was served, on

September 13, 2016, he "contacted his former supervisor at CYFD and emailed her a copy of the Summons. It was Defendant Bucag's understanding that his former supervisor would send the Summons to CYFD attorneys, and that the matter would be handled," and that he should wait to be contacted by the CYFD attorneys. Motion to Set Aside at 2 (citing the Declaration of Mayfritz Bucag at 1 (executed December 28, 2016), filed December 29, 2016 (Doc. 35-1)("Mayfritz Decl.")). Having not heard from the CYFD attorneys for some time after he made contact with his former supervisor, Bucag Google searched his name and discovered the Clerk's Entry of Default. See Motion to Set Aside at 2 (citing Mayfritz Decl. at 1-2). Bucag then reached out again to his former supervisor and alerted the supervisor to the Clerk's Entry of Default, and Bucag then received a call from the CYFD attorneys on December 9, 2016. See Motion to Set Aside at 2 (citing Mayfritz Decl. at 1-2).

The Motion to Set Aside then makes new legal argument -- in addition to that he made in the Response -- regarding the notion that "default judgments against state actors," such as Bucag, "are especially disfavored." Motion to Set Aside at 4-5 (citing rule 55(d) of the Federal Rules of Civil Procedure, which provides: "A default judgment may be entered against the United States, its officers, or its agencies only if the claimant establishes a claim or right to relief by evidence that satisfies the Court"). Further, Bucag references the Court's opinion in Dogs Deserve Better, Inc. v. N.M. Dogs Deserve Better, Inc., 2016 WL 6396392 (D.N.M. 2016)(Browning, J.), and asserts:

> "[T]he clerk or the court may enter a default upon the application of the non-defaulting party. The entry simply is an official recognition of the fact that one party is in default, as, for example, for failure to comply with the rules, to appear as scheduled, or to prosecute the case with due diligence. The entry is an interlocutory step that is taken under Rule 55(a) in anticipation of a final judgment by default under Rule 55(b)."

Motion to Set Aside at 5 (quoting Dogs Deserve Better, Inc. v. N.M. Dogs Deserve Better, Inc.,

2016 WL 6396392, at *16).  Bucag also argues that the standard underlying a "motion to set aside a default entry is less stringent then [sic] setting aside a default judgment, and may be granted for 'good cause shown.'"  Motion to Set Aside at 5 (quoting Dogs Deserve Better, Inc. v. N.M. Dogs Deserve Better, Inc., 2016 WL 6396392, at *16).  In particular, regarding a showing of good cause, Bucag suggests that the Court "may consider the factors of whether setting aside the entry of default would prejudice the non-movant, and whether the movant has presented a meritorious defense."  Motion to Set Aside at 5-6 (citing Pinson v. Equifax Credit Info. Servs, 316 F. App'x 744, 750 (10th Cir. 2009)(unpublished)("In deciding whether to set aside an entry of default, courts may consider, among other things, 'whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented.'"); Dogs Deserve Better, Inc. v. N.M. Dogs Deserve Better, Inc., 2016 WL 6396392, at *16).  Accordingly, Bucag reasserts that he "did not willfully default in this case," and that he "believes he has a meritorious defense, and as soon as he learned of the default, he notified Plaintiff . . . of his affirmative defenses and initial disclosures and immediately engaged in discovery."  Motion to Set Aside at 6.  Bucag additionally maintains that there will be no prejudice to Payne, because his "late-filed answer has caused no delay in moving this case forward . . . Bucag has not sought to extend any deadlines in this case, and no discovery has been delayed . . . [and] the same affirmative defenses . . . were raised [already by] Wilder . . . ."  Motion to Set Aside at 7.  Payne thus requests that the Court set aside the Clerk's Entry of Default.  See Motion to Set Aside at 7.

6.      **The Hearing.**

The Court held a hearing on June 5, 2017.  See Transcript of Hearing (taken June 5,

2017)("Tr.").[1]  At the hearing, the Court heard argument on a variety of issues, but began the

hearing with the Motion to Set Aside and the Motion for Default Judgment.  See Tr. at 2:5-7

(Court).  Payne argued first, and explained that at a previous hearing -- when the Court queried

as to the status of Bucag -- she "informed the Court that he had been in serious default at that

time, and that my intentions were to give him another week or two, due to my not liking to file

motions for default.  I did give him that week or two."  Tr. at 2:14-18 (Garcia).  Payne then

explained that she eventually "filed the motion for default, gained the clerk's entry of default.

And of course not long after that, Mr. Bucag showed up wanting back in to the lawsuit."  Tr. at

2:18-21 (Garcia).  Payne next suggested that Bucag's basis for evading the Clerk's Entry of

Default at this time is, apparently, that

> he was served with our lawsuit, turned that lawsuit over to his former supervisor
> whom he had worked for at CYFD, checked -- waited to hear something, started
> checking Internet websites on the status of the lawsuit.  He eventually learned and
> like I said I did wait a long time to file that motion for default.  But eventually
> [he] learned that default had been entered against him by the Court clerk, and then
> finally got around to calling somebody to find out what happened.  When he did
> call, of course whoever he had turned over his defense to made their entry and the
> ball got rolling.  Despite being in default an answer was filed without leave of the
> Court to file the answer, and ever since, he's conducted himself as if he's an
> active part of the lawsuit despite having default entered against him.

Tr. at 3:2-18 (Garcia).  Payne also alerted the Court that "Bucag is an educated man" and the

"summons is very clear."  Tr. at 3:22-4:2 (Garcia).  Next, Payne argued that "going through the

default process here in Federal Court is a little more onerous than state court.  But as we were

halfway through the process, he filed his paperwork to get back in."  Tr. at 4:12-15 (Garcia).  In

light of those facts, Payne asserted that there is no good cause to set aside the Clerk's Entry of

Default, because Bucag

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original,
unedited version.  Any final transcript may contain slightly different page and/or line numbers.

did absolutely nothing to ensure that he had presented a defense within the time line or the amount of time that we gave him afterward, until he was already in default. And so what did he actually do to cure the problem? What would have stopped this from happening in the first place? All he did was make a phone call and say hey, what's going on. They realized there was an issue two or three days later, he was in the lawsuit and the[n] his answer was filed []. That's my belie[f] of the facts as I see the[m] . . . I haven't talked to the gentleman or deposed him so I may be wrong on some of the facts, and if so I'm sure my colleagues will correct me. But as I stated, as far as the standard goes, I don't see good cause to set aside the clerk's entry of default.

Tr. at 5:1-12 (Garcia).

Bucag then argued, and asserted that he

didn't just sit on it. Right or wrong he sent it to his supervisor as a CYFD employee he assumed that would just take care of it. It didn't. But he did, it was him who discovered the default against him, again followed up and at this time a counsel was assigned. So really we're talking about a 70 day delay. He was served September 13, 2016, entered an appearance and filed an answer December 12, 2016. As his affidavit . . . shows, there was no disrespect for the Court, he was not intentionally trying to ignore it. He thought he was doing the right thing. It turned out it required a follow-up phone call to get the answer filed. . . . Nothing about this 70 day delay has halted the discovery process. A trial had already been set, deadlines had already been set, Mr. Bucag did not seek to vacate any of those. He immediately started engaging in discovery. Nothing by the 70 day delay caused any delay in the proceedings.

Tr. at 6:21-7:17 (Williams). Bucag also compared the standard for setting aside an entry of default with the standard for setting aside a default judgment, and argued that the standard for the former was much less stringent. See Tr. at 7:19-25 (Williams). Bucag then explored one factor for the Court's consideration -- "whether setting aside the entry would prejudice the nonmovant" -- and asserted that he had established there would be no prejudice, because Wilder had already asserted the exact same affirmative defenses and arguments Bucag proposed. Tr. at 8:1-12 (Williams). Bucag also asserted that he has a meritorious defense against Payne's allegations that he violated her constitutional rights. See Tr. at 8:12-17 (Williams). Bucag concluded by arguing:

> Again, I believe all factors the Court looks at in determining whether or not to set aside the interlocutory entry of default weigh[] in favor of defendant, Bucag. Again, most importantly, it was never his intention to willfully or wantonly ignore the Court's summons or to delay this matter. Again, through his efforts he found the default judgment [sic], immediately contacted, counsel was assigned and immediately answered the complaint. Again, we would request that the motion [for] default under 55[(b)] be denied and also that the Court grant the less stringent standard of setting aside the clerk's entry of default.

Tr. at 8:21-9:8 (Williams).

> The Court then inquired into CYFD's failure to handle this case for Bucag, to which

> Bucag explained his understanding to be that CYFD effectively assigned counsel to Ceballes in this case, and then []they looked on the computer somewhere saw counsel had been assigned not realizing it had only been assigned for defendant Ceballes. I don't know that for sure but that would be my best guess as to what happened since there was counsel that did enter an appearance, it would be shown up in Risk Management that there was someone representing Risk Management. There was just a mistake not realizing there were two Risk Management defendants.

Tr. at 10:6-14 (Williams). The Court was concerned with Bucag's response, however, because CYFD counsel was thus involved in the case, on Ceballes' behalf, and was apprised of the fact that Payne was going to seek default against Bucag during the Initial Scheduling Conference. See Tr. at 11:5-13 (Court). Bucag responded that was counsel's oversight, and that counsel erred, and she should have recognized the potential issue at that time. See Tr. at 11:14-21 (Williams). Bucag then requested the Court not consider CYFD and counsel's oversights against Bucag's interest. See Tr. at 11:22-25 (Williams).

In reply, then, Payne reiterated her transparency about her intention to seek default against Bucag, that she was not aware about how CYFD handles their attorney assignments, and that she thus did not discuss with Ceballes' attorney the issue regarding Bucag. See Tr. at 13:1-16 (Garcia). Payne then confirmed Bucag's argument that the standard for setting aside an entry of default is less stringent than that for setting aside a default judgment, but reiterated the effort

she had to undergo to attain the Clerk's Entry of Default in this case. See Tr. at 14:1-13 (Garcia). Payne then suggested that, if Bucag enters the case, it will be difficult on her to deal with his residence in Seattle and that she would prefer a stipulation that depositions will occur in New Mexico. See Tr. at 14:13-15:1 (Garcia). At that request, Bucag repeated that he would "fly him down here to assist in continuing to move this case forward." Tr. at 15:23-24, 16:11-16 (Williams, Court). The Court then indicated that was inclined to

> deny the motion for entry of a default judgment and also grant motion to set aside the default. It seems you know, he perhaps could have done some other things such as going and retaining his own attorney or pressing more CYFD, what they were doing, but it's not like he did nothing. He did try to get their attention and then he followed up. He continued to monitor the case, so he was worried about it. That may not have been the best thin[g] to have done, but it was not nothing, and so I'm inclined to, with the lower standard that we have, since we haven't entered default judgment, to go ahead and set it aside. So I'll give it some further thought. But I'm inclined to let him remain in the case without any sort of default or default judgment against him.

Tr. at 17:10-25 (Court).

## **LAW REGARDING SERVICE OF PROCESS**

Rule 4(m) of the Federal Rules of Civil Procedure requires a summons to be served within 120 days after the complaint is filed.

> If a defendant is not served within 120 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specific time. But, if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). The burden of establishing validity of service is on the plaintiff. See F.D.I.C. v. Oaklawn Apartments, 959 F.2d 170, 174 (10th Cir. 1992). In 1993, Congress amended former rule 4(m) and "broaden[ed] the district court's discretion [to permit untimely service of process] by allowing it to extend the time for service even when the plaintiff has not shown good cause." Espinoza v. United States, 52 F.3d 838, 840-41 (10th Cir. 1995).

"A district court abuses its discretion [in deciding whether to dismiss a case for untimely service of process] if its decision is arbitrary, capricious, or whimsical." Smyers v. County of Atchison, Kan., 336 F. App'x 819, 820-21 (10th Cir. 2009). Further, "[a] district court that does not exercise its discretion, or makes a decision without providing reasons, abuses that discretion." ARW Exploration Corp. v. Aguirre, 45 F.3d 1455, 1459 (10th Cir. 1995).

Thus, the court now employs a two-step analysis for determining whether to grant an extension of time when a summons and complaint has not been timely served. See Salazar v. City of Albuquerque, 278 F.R.D. 623, 626-27 (D.N.M. 2011)(Browning, J.). First, the plaintiff is entitled to a mandatory extension of time if the plaintiff can demonstrate good cause for failing to timely effect service. See Espinoza v. United States, 52 F.3d at 841. "The good cause provision of Rule 4[(m)] should be read narrowly to protect only those plaintiffs who have been meticulous in their efforts to comply with the Rule." Despain v. Salt Lake Area Metro Gang Unit, 13 F.3d 1436, 1438 (10th Cir. 1994)(internal quotation marks omitted). "[I]nadvertence or negligence alone do not constitute 'good cause' for failure of timely service. Mistake of counsel or ignorance of the rules also usually do not suffice." In re Kirkland, 86 F.3d 172, 176 (10th Cir. 1996). Avoiding or evading service of process, however, may constitute "good cause," requiring a mandatory extension of time in which to serve. Hendry v. Schneider, 116 F.3d 446, 449 (10th Cir. 1997).

Second, if the plaintiff fails to show good cause, the court still must exercise its discretion, and either dismiss the case without prejudice or extend the time for service. See Espinoza v. United States, 52 F.3d at 842. In making its determination whether to grant a permissive extension, the court may consider several factors, including whether the applicable statute of limitations would bar the re-filed action and other policy considerations. See Espinoza

v. United States, 52 F.3d at 841-42.

> The new subdivision explicitly provides that the court shall allow additional time if there is good cause for the plaintiff's failure to effect service in the prescribed 120 days, and authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown. Such relief formerly was afforded in some cases, partly in reliance on Rule 6(b). Relief may be justified, for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service.

Fed. R. Civ. P. 4(m) Advisory Committee's note (1993 Amend.). See Salazar v. City of Albuquerque, 278 F.R.D. at 626-27. See also Dogs Deserve Better, Inc. v. N.M. Dogs Deserve Better, Inc., 2016 WL 6396392, at *13-14.

### LAW REGARDING WAIVER OF SERVICE OF PROCESS

A defendant may also waive service of process. See Kiro v. Moore, 229 F.R.D. 228, 229-30 (D.N.M. 2005)(Browning, J.). Under rule 4(i), "[i]f service is not waived, the person effecting service shall make proof thereof to the court." Fed. R. Civ. P. 4(i). Rule 12(b)(4) and 12(b)(5) allow a defendant to defend upon the grounds of insufficient service of process. See Fed. R. Civ. P. 12(b)(4); 12(b)(5). Under rule 12(h), however, the defense of "service of process must be raised in a party's first responsive pleading or by motion before the responsive pleading." United States v. 51 Pieces of Real Property Roswell, N.M., 17 F.3d 1306, 1314 (10th Cir. 1994). See Fed. R. Civ. P. 12(h)(1). "If a party files a pre-answer motion and fails to assert the defenses of lack of personal jurisdiction or insufficiency of service, he waives these defenses." Fed. Deposit Ins. Corp. v. Oaklawn Apartments, 959 F.2d 170, 175 (10th Cir. 1992)(citing Fed. R. Civ. P. 12(h)(1)).

Rule 4(d)(1) further requires individuals, corporations, or associations that are subject to service under Rule 4(e), (f), or (h), to cooperate in saving unnecessary expenses of serving a summons and complaint. See Fed. R. Civ. P. 4(d)(1). A defendant who is located in the United

States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure. <u>See</u> Fed. R. Civ. P. 4(d)(2). If the waiver is signed and returned, the defendant cannot object to the absence of a summons or of service. <u>See</u> Fed. R. Civ. P. 4(d)(2). If the defendant waives service, the defendant must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. <u>See</u> Fed. R. Civ. P. 4(d)(3). By signing and returning the waiver form, the defendant is allowed more time to respond than if a summons had been served. <u>See</u> Fed. R. Civ. P. 4(d)(3). <u>See also</u> <u>Dogs Deserve Better, Inc. v. N.M. Dogs Deserve Better, Inc.</u>, 2016 WL 6396392, at *14.

## LAW REGARDING DEFAULT JUDGMENTS AND THE ENTRY OF DEFAULT UNDER RULE 55

Rule 55 of the Federal Rules of Civil Procedure sets out a two-step process for a default judgment. <u>See</u> <u>United States v. Rivera</u>, 2015 WL 4042197, at *9-12 (D.N.M. 2015)(Browning, J.). First, a party must obtain a Clerk's entry of default. <u>See</u> Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."); <u>Watkins v. Donnelly</u>, 551 F. App'x 953, 958 (10th Cir. 2014)(unpublished)[2]("Entry of

---

[2]<u>Watkins v. Donnelly</u> is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. <u>See</u> 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

default by the clerk is a necessary prerequisite that must be performed before a district court is permitted to issue a default judgment."). Second, the party must either request the Clerk to enter default judgment when the claim is for "a sum certain or a sum that can be made certain by computation," Fed. R. Civ. P. 55(b)(1), or, "[i]n all other cases, the party must apply to the court for a default judgment," Fed. R. Civ. P. 55(b)(2).

After entering default judgment, a district court takes all of the well-pleaded facts in a complaint as true. See United States v. Craighead, 176 F. App'x 922, 925 (10th Cir. 2006) (unpublished); Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." (citations omitted)). "If defendant does not contest the amount prayed for in the complaint [by failing to answer] and the claim is for a sum certain or a sum that can be made certain by computation, the judgment generally will be entered for that amount without any further hearing." United States v. Craighead, 176 F. App'x at 925 (alteration in original)(quoting 10A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus & Adam N. Steinman, Federal Practice & Procedure § 2688 (3d ed. 1998)). See Fed. R. Civ. P. 8(d) ("Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading."). A court may enter a default judgment for a damage award without a hearing if the amount claimed is "one capable of mathematical calculation."

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted). The Court concludes that Watkins v. Donnelly, United States v. Craighead, 176 F. App'x 922 (10th Cir. 2006)(unpublished), Pinson v. Equifax Credit Information Services, Inc., 316 F. App'x 744 (10th Cir. 2009)(unpublished), and United States v. $285,350.00 in U.S. Currency, 547 F. App'x 886, (10th Cir. 2013)(unpublished), all have persuasive value with respect to material issues, and will assist the Court in its preparation of this Memorandum Opinion and Order.

Applied Capital, Inc. v. Gibson, 558 F. Supp. 2d 1189, 1202 (D.N.M. 2007)(Browning, J.)

(quoting H.B. Hunt v. Inter-Globe Energy, Inc., 770 F.2d 145, 148 (10th Cir. 1985)(citing

Venable v. Haislip, 721 F.2d at 300). "It is a familiar practice and an exercise of judicial power

for a court upon default, by taking evidence when necessary or by computation from facts of

record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment

accordingly." 10A Wright & Miller, supra, § 2688 (quoting Pope v. United States, 323 U.S. 1,

12 (1944)). "If the damages sum is not certain or capable of easy computation, the court may"

conduct such hearings or order such references as it deems necessary. Applied Capital, Inc. v.

Gibson, 558 F. Supp. 2d at 1202[3] (citing Beck v. Atl. Contracting Co., 157 F.R.D. 61, 64

(D. Kan. 1994)(Lungstrum, J.)(superseded by statute)). See Fed. R. Civ. P. 55(b)(2)(B) ("The

court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs

to . . . determine the amount of damages.").

        "Default judgments are a harsh sanction." Ruplinger v. Rains, 946 F.2d 731, 732 (10th

Cir. 1991)("In re Rains"). The Court has noted that, "[b]ecause default judgment is a harsh

sanction involving a court's power to enter and enforce judgments regardless of the merits of a

case, courts do not favor such a sanction 'purely as a penalty for delays in filing or other

---

[3]In that case, the Court provided:

"Entry of default precludes a trial on the merits." Olcott v. Delaware Flood Co.,
327 F.3d 1115, 1119 n.3 (10th Cir. 2003). Rule 55(b)(2) does not contain an
inherent jury requirement; rather, it preserves the right to a jury only when statute
requires. See Olcott v. Delaware Flood Co., 327 F.3d at 1124. At least where the
parties have not requested a jury prior to entry of default, the "[d]efendants do not
have a constitutional right to a jury trial following entry of default." . . . Mitchell
v. Bd. of County Comm'rs of the County of Santa Fe, No. 05CV1155, 2007 WL
2219420, at *18-23 (D.N.M. May 9, 2007)(Browning, J.).

Applied Capital, Inc. v. Gibson, 558 F. Supp. 2d at 1202.

procedural error.'" Noland v. City of Albuquerque, 2009 WL 2424591, at *1 (D.N.M. June 18, 2009)(Browning, J.)(quoting In re Rains, 946 F.2d at 733).

> [S]trong policies favor resolution of disputes on their merits: the default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights. The default judgment remedy serves as such a protection.

In re Rains, 946 F.2d at 732-33 (citations and internal quotation marks omitted). See Noland v. City of Albuquerque, 2009 WL 2124591, at *1 (denying motion for default judgment, because the counsel for the defendant City of Albuquerque "entered an appearance three days after Noland filed his motion for default judgment," and, thus, the Court could not "reasonably say that the City of Albuquerque is an essentially unresponsive party, that the adversary process has been halted, or that Noland faces interminable delay because of the City of Albuquerque's actions").

"The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). "[T]he good cause required by Fed. R. Civ. P. 55(c) for setting aside entry of default poses a lesser standard for the defaulting party than the excusable neglect which must be shown for relief from judgment under Fed. R. Civ. P. 60(b)." Pinson v. Equifax Credit Info. Servs., Inc., 316 F. App'x 744, 750 (10th Cir. 2009)(unpublished) (quoting Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp., 115 F.3d 767, 775 n.6 (10th Cir. 1997)). See Hunt v. Ford Motor Co., 1995 WL 523646, at *3. The distinction between setting aside an entry of default and setting aside a default judgment "reflects the different consequences of the two events and the different procedures that bring them about." 10A Wright & Miller, supra, § 2692.

[T]he clerk or the court may enter a default upon the application of the nondefaulting party. The entry simply is an official recognition of the fact that one party is in default, as, for example, for failure to comply with the rules, to appear as scheduled, or to prosecute the case with due diligence. The entry is an interlocutory step that is taken under Rule 55(a) in anticipation of a final judgment by default under Rule 55(b).

In sharp contrast, a final default judgment is not possible against a party in default until the measure of recovery has been ascertained, which typically requires a hearing, in which the defaulting party may participate; in some situations, a jury trial may be made available to determine an issue of damages. Moreover, the entry of a default judgment is a final disposition of the case and an appealable order.

. . . .

Additional differences between relief from the entry of a default and from a default judgment appear in the grounds that will support the motion being granted. Stated generally, the defaulting party is not entitled to relief from a judgment as a matter of right under Rule 60(b). The movant must present a justification supporting the relief motion and must establish his contentions if challenged. Although whether relief will be granted is a matter within the sound discretion of the trial court, the vacation of a default judgment is subject to the explicit provisions of Rule 60(b), which places additional restraints upon the court's discretion. The motion to set aside a default entry, on the other hand, may be granted for "good cause shown," which gives a court greater freedom in granting relief than is available in the case of default judgments.

10A Wright & Miller, supra, § 2692 (footnotes omitted).

While there are some differences between setting aside the entry of default and setting aside a default judgment, there are some important similarities, including that courts may consider the same factors: whether the party willfully defaulted, whether setting aside the entry of default or default judgment would prejudice the non-movant, and whether the movant has presented a meritorious defense. See Pinson v. Equifax Credit Info Servs., Inc., 316 F. App'x at 750 ("In deciding whether to set aside an entry of default, courts may consider, among other things, 'whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented.'" (quoting Dierschke v. O'Cheskey, 975 F.2d

181, 183 (10th Cir. 1992)("In re Dierschke")); United States v. $285,350.00 in U.S. Currency, 547 F. App'x 886, 887 (10th Cir. 2013)(unpublished)("Three requirements must be met when setting aside a default judgment under Rule 60(b): '(1) the moving party's culpable conduct did not cause the default; (2) the moving party has a meritorious defense; and (3) the non-moving party will not be prejudiced by setting aside the judgment.'" (quoting United States v. Timbers Preserve, 999 F.2d 452, 454 (10th Cir. 1993), abrogated on other grounds by Degen v. United States, 517 U.S. 820, 825 (1996)). The United States Court of Appeals for the Tenth Circuit has, at times, listed two factors rather than three for the standard in setting aside a default judgment:

> Rule 60(b) of the Federal Rules of Civil Procedure permits relief from a final judgment only if the movant can demonstrate justifiable grounds, including mistake, inadvertence, surprise or excusable neglect. In the case of default judgments, courts have established the further requirement that a movant demonstrate the existence of a meritorious defense. E.g., Gomes v. Williams, 420 F.2d 1364, 1366 (10th Cir. 1970). A 60(b) motion thus comprehends two distinct aspects[:] justification for relief and a meritorious defense.

In re Stone, 588 F.2d at 1319. See Sawyer v. USAA Ins. Co., 839 F. Supp. 2d 1189, 1230 (D.N.M. 2012)(Browning, J.)(setting aside a default judgment, because, "when a plaintiff fails to properly serve a defendant, a default judgment is void and should be set aside under rule 60(b)(4)"). "Although how these factors will be evaluated and weighed lies within the discretion of the trial court to a considerable degree, . . . federal courts are willing to grant relief from a default entry more readily and with a lesser showing than they are in the case of a default judgment." 10A Wright & Miller, supra, § 2692 (footnotes omitted). "The standard for setting aside an entry of default under Rule 55(c) is fairly liberal because '[t]he preferred disposition of any case is upon its merits and not by default judgment.'" Crutcher v. Coleman, 205 F.R.D. 581, 584 (D. Kan. 2001)(Vratil, J.)(quoting Gomes v. Williams, 420 F.2d 1364, 1366 (10th Cir. 1970)). See Applied Capital, Inc. v. Gibson, 2007 WL 5685131, at *20-23 (liberally construing

a pro se defendant's motion to dismiss as a motion to set aside the default, but concluding that the pro se defendant did not show good cause for the Court to set aside the entry of default, because, although setting aside the entry of default would not prejudice the plaintiff, the pro se defendant was "fully aware of the need to answer within the given time limitation and chose not to respond timely," and he failed to appear at a hearing to support his allegation that he had a meritorious defense). See also Dogs Deserve Better, Inc. v. N.M. Dogs Deserve Better, Inc., 2016 WL 6396392, at *14-17.

## LAW REGARDING RULE 60(b)

Rule 60(b) of the Federal Rules of Civil Procedure allows a court to relieve a party from a judgment or order for "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), or "any other reason that justifies relief," Fed. R. Civ. P. 60(b)(6). "Rule 60(b) is an extraordinary procedure permitting the court that entered judgment to grant relief therefrom upon a showing of good cause within the rule." Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d 1442, 1444 (10th Cir. 1983). Rule 60(b) "is not a substitute for appeal, and must be considered with the need for finality of judgment." Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d at 1444 (citing Brown v. McCormick, 608 F.2d 410, 413 (10th Cir. 1979)). The rule was designed to strike a "delicate balance" between respecting the finality of judgment and, at the same time, recognizing the court's principal interest of executing justice. Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d at 1444. Once a case is "unconditionally dismiss[ed],"[4] the Court loses all jurisdiction over the case other than the ability

---

[4] Rule 41(a)(2), which governs all dismissals undertaken by way of a court order, grants courts discretion to condition dismissal "on terms that the court considers proper," Fed. R. Civ. P. 41(a)(2), formerly, "on terms and conditions as the court deems proper," Smith v. Phillips, 881 F.2d 902, 904-05 (10th Cir. 1989)(quoting Fed. R. Civ. P. 41(a)(2) (1988)). Such conditions "could include retention of some jurisdiction by the court." Smith v. Phillips, 881 F.2d at 905

to hear motions under rule 60(b). Smith v. Phillips, 881 F.2d 902, 904 (10th Cir. 1989)("We agree with the Seventh Circuit that '[a]n unconditional dismissal terminates federal jurisdiction except for the limited purpose of reopening and setting aside the judgment of dismissal within the scope allowed by [Fed. R. Civ. P.] 60(b)." (alterations in original)).

---

(citing McCall-Bey v. Franzen, 777 F.2d 1178, 1188-90 (7th Cir. 1985)). The Tenth Circuit has stated that, if the dismissal is pursuant to rule 41(a)(1)(A)(ii), undertaken without a court order, then the court "is powerless to condition [the] dismissal . . . upon a retention of jurisdiction." 881 F.2d at 905. This principle is likely no longer true post-Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375 (1994)("Kokkonen"); the district court can probably attach a condition retaining jurisdiction, but only if the parties agree.

> Even when . . . the dismissal is pursuant to Rule 41(a)(1)[(A)](ii) (which does not by its terms empower a district court to attach conditions to the parties' stipulation of dismissal) we think the court is authorized to embody the settlement contract in its dismissal order or, what has the same effect, retain jurisdiction over the settlement contract) [sic] if the parties agree.

Kokkonen, 511 U.S. at 381-82. See Macias v. N.M. Dep't of Labor, 300 F.R.D. 529, 551-63 (D.N.M. 2014)(Browning, J.)(ruling that the Court lacks jurisdiction to enforce a settlement agreement unless the dismissal order explicitly retains jurisdiction or incorporates the settlement agreement's terms into the order).

 Two factors that militate against the view that a federal court may retain jurisdiction of a case dismissed pursuant to rule 41(a)(1)(A) are: (i) the proclamation in Kokkonen was dicta, and "[i]t is to the holdings of [the Supreme Court's] cases, rather than their dicta, that we must attend," 511 U.S. 375, 379; and (ii) the Court refers to "embody[ing] the settlement contract in its dismissal order," but rule 41(a)(1)(A) provides -- in its very title -- that it pertains to dismissals effectuated "without a court order," Fed. R. Civ. P. 41(a)(1)(A) (emphasis omitted).

 The Court must, however, interpret Smith v. Phillips in light of the Supreme Court's subsequent decision in Kokkonen, in which the Supreme Court held that a district court's ancillary jurisdiction does not extend to the post-dismissal enforcement of federal case settlement agreements, unless: (i) there is an independent basis of federal subject-matter jurisdiction to hear the claims; (ii) the court incorporated the terms of the settlement agreement into its order of dismissal; or (iii) the court includes a term "'retaining jurisdiction'" in its order of dismissal. Kokkonen, 511 U.S. at 381. That decision continues to permit district courts to condition dismissals under rule 41(a)(2), see Kokkonen, 511 U.S. at 381, and appears to have no bearing on courts' power to reopen cases pursuant to rule 60(b), see Kokkonen, 511 U.S. at 378 (noting, without opining on, the practice of "[s]ome Courts of Appeals" to "reopen[ ] . . . dismissed suit[s] by reason of breach of the agreement that was the basis for dismissal").

Motions to obtain relief from a judgment or order based on "mistake, inadvertence, surprise, or excusable neglect" must be brought "within a reasonable time . . . no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). <u>See</u> <u>Blanchard v. Cortes-Molina</u>, 453 F.3d 40, 44 (1st Cir. 2006)("[R]elief from judgment for reasons of 'mistake, inadvertence, surprise, or excusable neglect,' must be sought within one year of the judgment."). This deadline may not be extended and is not subject to the court's discretion. <u>See</u> Fed. R. Civ. P. 6(b)(2) ("A court <u>must not</u> extend the time to act under Rules 50(b) and (d), 52(b), 59(b), (d), and (e), and <u>60(b)</u>." (emphases added)). The pendency of an appeal does not toll the time requirement for pursuing a motion under rule 60(b). <u>See</u> Fed. R. Civ. P. 60(c)(1); <u>Griffin v. Reid</u>, 259 F. App'x 121, 123 (10th Cir. 2007)(unpublished); <u>Tool Box, Inc. v. Ogden City Corp.</u>, 419 F.3d 1084, 1088 (10th Cir. 2005)("[A]n appeal does not toll or extend the one-year time limit of Rule 60(b)."). No time limit applies to rule 60(b)(6) other than that the motion be made within a reasonable time. <u>See</u> Fed. R. Civ. P. 60(c)(1).

1.     **Rule 60(b)(1).**

The Tenth Circuit uses three factors in determining whether a judgment may be set aside in accordance with rule 60(b)(1): (i) whether the moving party's culpable conduct caused the default; (ii) whether the moving party has a meritorious defense; and (iii) whether the nonmoving party will be prejudiced by setting aside the judgment. <u>See</u> <u>United States v. Timbers Preserve</u>, 999 F.2d 452, 454 (10th Cir. 1993).

Under some circumstances, a party can rely on rule 60(b)(1) to rectify its attorney's mistake or when its attorney acted without its authority. <u>See</u> <u>Yapp v. Excel Corp.</u>, 186 F.3d 1222, 1231 (10th Cir. 1999)("Rule 60(b)(1) motions premised upon mistake are intended to provide relief to a party . . . when the party has made an excusable litigation mistake or an

attorney has acted without authority . . . .").  Mistake in this context entails either acting without the client's consent or making a litigation mistake, such as failing to file or comply with deadlines.  See Yapp v. Excel Corp., 186 F.3d at 1231.  If the alleged incident entails a mistake, then it must be excusable, meaning that the party was not at fault.  See Pioneer Inv. Servs. v. Brunswick Assocs. LP, 507 U.S. 380, 394 (1993)("This leaves, of course, the Rule's requirement that the party's neglect be 'excusable.'"); Cashner v. Freedom Stores, Inc., 98 F.3d 572, 577 (10th Cir. 1996)("If the mistake alleged is a party's litigation mistake, we have declined to grant relief under Rule 60(b)(1) when the mistake was the result of a deliberate and counseled decision by the party.").  Cf. Pelican Prod. Corp. v. Marino, 893 F.2d 1143, 1146 (10th Cir. 1990)(holding attorney carelessness is not a basis for relief under Rule 60(b)(1)).

Courts will not grant relief when the mistake of which the movant complains is the result of an attorney's deliberate litigation tactics.  See Cashner v. Freedom Stores, Inc., 98 F.3d at 577.  This rule exists because a party

> voluntarily chose [the] attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.

Pioneer Inv. Servs. v. Brunswick Assocs. LP, 507 U.S. at 397 (quoting Link v. Wabash R.R. Co., 370 U.S. 626, 633-34 (1962))(internal quotation marks omitted).  The Tenth Circuit has held that there is nothing "novel" about "the harshness of penalizing [a client] for his attorney's conduct" and has noted that those "who act through agents are customarily bound," even though, when "an attorney is poorly prepared to cross-examine an expert witness, the client suffers the consequences."  Gripe v. City of Enid, Okla., 312 F.3d 1184, 1189 (10th Cir. 2002).  The Court has previously stated:

There is a tension between how the law treats attorney actions that are without authority, thus permitting relief under rule 60(b), and how the law treats those attorney actions which are inexcusable litigations decisions, thus failing to qualify for relief; although the distinction between those actions may not always be logical, it is well established.

Wilson v. Jara, No. CIV 10-0797 JB/WPL, 2012 WL 1684595, at *7 (D.N.M. May 10, 2012)(Browning, J.).[5]

[5]The Supreme Court has recognized that individuals must be "held accountable for the acts and omissions of their chosen counsel," and that the "proper focus is upon whether the neglect of respondents *and their counsel* was excusable." Pioneer Inv. Servs. Co. v. Brunswick Assoc. LP, 507 U.S. at 397 (emphasis in original). At the same time, the Tenth Circuit has held that, when counsel acts without authority, rule 60(b)(1) provides relief from judgment. See Cashner v. Freedom Stores, Inc., 98 F.3d at 576 ("[A]s a general proposition, the 'mistake' provision in Rule 60(b)(1) provides for the reconsideration of judgment only where . . . an attorney in the litigation has acted without authority from a party . . . ."). "There is a tension between these decisions, because, ordinarily, a client will not authorize his or her attorney to act in a negligent manner or to make a mistake." Wilson v. Jara, 2012 WL 1684595, at *7 n.7.

The Court is inclined to conclude that, when the client acknowledges that he or she has hired the attorney, there is a difference between decisions which terminate the litigation, such as settlement or a stipulation of dismissal, and other litigation decisions, because decisions to terminate the litigation are ordinarily left to the client. See Chavez v. Primus Auto. Fin. Servs., 125 F.3d 861, 1997 WL 634090, at *4-5 (10th Cir. 1997)(unpublished)(citing Navajo Tribe of Indians v. Hanosh Chevrolet-Buick, Inc., 749 P.2d 90, 92 (1988); Bolles v. Smith, 591 P.2d 278, 280 (1979)). "Otherwise the Court has difficulty explaining attorney decisions which are made without authority and attorney decisions for which it is acceptable that the client suffer the consequences." Wilson v. Jara, 2012 WL 1684595, at *7 n.7. In Chavez v. Primus Auto. Fin. Servs., the Tenth Circuit recognized that "the mere employment of an attorney does not give him the actual, implied or apparent authority to compromise his client's case." 1997 WL 634090, at *4. Few Tenth Circuit cases analyze whether an attorney has acted without authority. The cases in which the Tenth Circuit has found a lack of authority appear to fall into two categories: (i) cases in which the attorney entered an appearance without the client's knowledge, see, e.g., FDIC v. Oaklawn Apts., 959 F.2d at 175-76 (finding that there were factual issues which the district court needed to resolve where "[t]here is nothing in the record indicating when Appellants became aware of the lawsuit and of Newcombe's purported representation"); and (ii) cases in which the attorney's actions terminate the litigation, see, e.g., Thomas v. Colo. Trust Deed Funds, Inc., 366 F.2d 136, 139-40 (10th Cir. 1966)(finding that, as to one of the plaintiffs, "the record shows that he did not participate in the transactions and negotiations with the S.E.C. and did not consent to the execution of the stipulation of the judgment"); Cashner v. Freedom Stores, Inc., 98 F.3d at 577 (citing with approval Surety Ins. Co. of Cal. v. Williams, 729 F.2d 581, 582-83 (8th Cir. 1984), which held that a "judgment entered upon an agreement by the attorney may be set aside on affirmative proof that the attorney had no right to consent to its entry"). Because decisions that terminate the litigation are ordinarily the client's prerogative,

## 2.    **Rule 60(b)(6).**

Rule 60(b)(6) provides that a court may relieve a party from final judgment, order, or proceeding for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  No time limit applies to rule 60(b)(6) save that the motion be made within a reasonable time.  See Fed. R. Civ. P. 60(c)(1).  "Thus, to the extent it is applicable, clause (6) appears to offer a means of escape from the one-year limit that applies to motions under clauses (1), (2), and (3)."  Wright & Miller, supra, § 2864, at 490.  In Pioneer Investment Services Co. v. Brunswick Associates Ltd., 507

_____

those decisions fit more squarely within rule 60(b)(1)'s "lack of consent" prong.  Decisions where the purported client is unaware of the litigation, or of the attorney's attempt to act on his or her behalf, would also fit within rule 60(b)(1)'s "lack of consent" prong, because an individual has the right to choose his or her own attorney, or whether he or she wishes to have any attorney.  Other litigation decisions are made jointly or are within the attorney's control, see Model Code of Prof'l Conduct R. 1.2 cmt. 1 (2011)("With respect to the means by which the client's objectives are to be pursued, the lawyer shall consult with the client . . . and may take such action as is impliedly authorized to carry out the representation."); Pittman ex rel. Sykes v. Franklin, 282 F. App'x 418, 427 n.6 (6th Cir. 2008)(unpublished)("[T]he decision to allege comparative fault as an affirmative defense falls within a narrow band of circumstance in which an attorney may act without consulting his or her client."), and, thus, to give final judgments meaning and allow cases to terminate, it is logical that those decisions must fall within the "excusable litigation mistake" prong, or be based on a substantive mistake of law or fact.

Although the Tenth Circuit does not appear to have expressed its views on where the line is drawn between attorneys acting without consent and litigation mistakes, or acknowledged the tension between these two categories, the Court concludes that the appropriate division is, when the client is aware that the attorney is acting on his or her behalf, between decisions which dispose of the case and ordinarily require client consent, and other routine attorney decisions which take place over the course of the case.  The Court also notes that rules of professional conduct require, "[i]n a criminal case," for a lawyer to "abide by the client's decision, after consultation with the lawyer, as to the plea to be entered, whether to waive a jury trial and whether the client will testify."  Model Rules of Prof'l Conduct R. 1.2(a).  While a decision on the plea to be entered in a criminal case is comparable to whether to settle a civil case, the Court has not located any decisions permitting rule 60(b) relief when a civil attorney waives his or her client's right to a jury trial.  One unpublished decision from the United States Court of Appeals for the Fourth Circuit discussed briefly a scenario where, without resolving the merits of the issue, a criminal defendant raised through a rule 60(b) motion in a habeas preceding that "his trial counsel had prevented him from testifying in his defense."  United States v. McMahan, 8 F. App'x 272, 274 (4th Cir. 2001)(unpublished).

U.S. at 380, the Supreme Court reasoned that, to avoid abrogating the one-year time limit for rule 60(b)(1) to (3), rule 60(b)' s "provisions are mutually exclusive, and thus a party who failed to take timely action due to 'excusable neglect' may not seek relief more than a year after the judgment by resorting to subsection (6)." 507 U.S. at 393 (citing Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863 & n.11 (1988)). "If the reasons offered for relief from judgment could be considered under one of the more specific clauses of Rule 60(b)(1)-(5), those reasons will not justify relief under Rule 60(b)(6)." Moore et al., supra, § 60.48[2], at 60-182. Accord Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. at 863 n.11 ("This logic, of course, extends beyond clause (1) and suggests that clause (6) and clauses (1) through (5) are mutually exclusive.").

Rule 60(b)(6) is a "grand reservoir of equitable power to do justice in a particular case." Van Skiver v. United States, 952 F.2d 1241, 1244 (10th Cir. 1991)(internal quotation marks omitted). "The Rule does not particularize the factors that justify relief, but we have previously noted that it provides courts with authority 'adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice,' while also cautioning that it should only be applied in 'extraordinary circumstances.'" Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. at 863. Generally, the situation must be one beyond the control of the party requesting relief under rule 60(b)(6) to warrant relief. See Ackermann v. United States, 340 U.S. 193, 202 (1950)("The comparison [of prior precedent] strikingly points up the difference between no choice and choice; imprisonment and freedom of action; no trial and trial; no counsel and counsel; no chance for negligence and inexcusable negligence. Subsection 6 of Rule 60(b) has no application to the situation of petitioner."). Legal error that provides a basis for relief under

rule 60(b)(6) must be extraordinary, as the Tenth Circuit discussed in <u>Van Skiver v. United States</u>:

> The kind of legal error that provides the extraordinary circumstances justifying relief under Rule 60(b)(6) is illustrated by <u>Pierce</u> [v. Cook & Co., 518 F.2d 720, 722 (10th Cir. 1975)(en banc)]. In that case, this court granted relief under 60(b)(6) when there had been a post-judgment change in the law "arising out of the same accident as that in which the plaintiffs . . . were injured." <u>Pierce</u>, 518 F.2d at 723. However, when the post-judgment change in the law did not arise in a related case, we have held that "[a] change in the law or in the judicial view of an established rule of law" does not justify relief under Rule 60(b)(6). <u>Collins v. City of Wichita</u>, 254 F.2d 837, 839 (10th Cir. 1958).

<u>Van Skiver v. United States</u>, 952 F.2d at 1244-45.

"Courts have found few narrowly-defined situations that clearly present 'other reasons justifying relief.'" Wright & Miller, <u>supra</u>, § 2864, at 483. The Supreme Court has expounded:

> To justify relief under subsection (6), a party must show "extraordinary circumstances" suggesting that the party is faultless in the delay. If a party is partly to blame for the delay, relief must be sought within one year under subsection (1) and the party's neglect must be excusable. In <u>Klapprott</u>, for example, the petitioner had been effectively prevented from taking a timely appeal of a judgment by incarceration, ill health, and other factors beyond his reasonable control. Four years after a default judgment had been entered against him, he sought to reopen the matter under Rule 60(b) and was permitted to do so.

<u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.</u>, 507 U.S. at 393 (citing <u>Liljeberg v. Health Servs. Acquisition Corp.</u>, 486 U.S. at 863 & n.11; <u>Ackerman v. United States</u>, 340 U.S. at 197-200; <u>Klapprott v. United States</u>, 335 U.S. 601, 613-614 (1949)). <u>See</u> <u>Gonzalez v. Crosby</u>, 545 U.S. 524, 535 (2005)("[O]ur cases have required a movant seeking relief under Rule 60(b)(6) to show 'extraordinary circumstances' justifying the reopening of a final judgment."). In <u>Gonzalez v. Crosby</u>, the Supreme Court found a change in the law during the pendency of a habeas petition was not an extraordinary circumstance. <u>See</u> 545 U.S. at 537.

When the Supreme Court first addressed rule 60(b)(6) a year after it was introduced to the federal rules, while the Justices were sharply divided on other issues, no dispute arose from

Justice Black's statement: "[O]f course, the one year limitation would control if no more than 'neglect' was disclosed by the petition. In that event the petitioner could not avail himself of the broad 'any other reason' clause of 60(b)." Klapprott v. United States, 335 U.S. at 613. See Wright & Miller, supra, § 2864, at 493.

Examples where courts apply rule 60(b)(6) include "settlement agreements when one party fails to comply" and courts use the rule "to return the parties to the status quo," or in cases where fraud is used by a "party's own counsel, by a codefendant, or by a third-party witness," which does not fit within rule 60(b)(3)'s provision for fraud by an adverse party. Wright & Miller, supra, § 2864, at 485, 487. The most common application is to grant relief "when the losing party fails to receive notice of the entry of judgment in time to file an appeal."[6] Wright & Miller, supra, § 2864, at 488. When moving for relief pursuant to rule 60(b)(6), it is not enough to argue the same issues that a court has already addressed. See Pyeatt v. Does, 19 F. App'x 785, 788 (10th Cir. 2001)(unpublished)("[A] motion to reconsider [that] simply reasserts information considered by the district court in its initial determination . . . does not meet the extraordinary circumstances standard required for Rule 60(b)(6) relief."). See also Dogs Deserve Better, Inc. v. N.M. Dogs Deserve Better, Inc., 2016 WL 6396392, at *17-21.

---

[6]Professors Charles Wright and Arthur Miller note that

[m]ost of those cases, however, predate the 1991 amendment to Appellate Rule 4(a)(6), which now provides relief from the strict appellate filing rule if the party did not learn of the entry of the judgment. In light of that change, most courts have held that resort to Rule 60(b) as a means of extending the appeal time no longer is appropriate, although the Rule 60(b) approach is still utilized in some courts, primarily in the Sixth Circuit.

Wright & Miller, supra, § 2864, at 489-90 (citations omitted). See Clark v. Lavallie, 204 F.3d 1038, 1041 (10th Cir. 2000)("Rules 4(a)(6) and 77(d) 'precludes the use of Fed. R. Civ. P. 60(b)(6) to cure problems of lack of notice.'" (citations omitted)).

## ANALYSIS

The standard for setting aside an entry of default under rule 55(c) is liberal, allowing the Court to consider, among other things, whether the default was willful and culpable, whether setting it aside would prejudice the adversary, or whether a meritorious defense is presented. Pursuant to its analysis under rule 55(c) -- keeping in mind the Court's strong preference for resolving disputes on the merits, and not by default judgment -- the Court concludes that: (i) setting aside the Clerk's Entry of Default in favor of continuing the litigation will not prejudice Payne; and (ii) Bucag's conduct resulting in the Clerk's Entry of Default was not willful and culpable, but instead the consequence of confusion between him and his employer, CYFD. Under the liberal standard, the Court concludes that good cause exists, and thus (i) denies Payne's Motion for Default Judgment, and (ii) grants Bucag's Motion to Set Aside.

In deciding whether to set aside an entry of default, courts may consider, among other things, "whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented." Pinson v. Equifax Credit Info. Servs., 316 F. App'x at 749. See In re Dierschke, 975 F.2d at 183. Unlike the steep showing needed to set aside a judgment under rule 60, the Court has more discretion in its consideration of a motion to set aside a clerk's entry of default. See Pinson v. Equifax Credit Info. Servs., 316 F. App'x at 749. In exercising its discretion in this rule 55 context, the Court is mindful of the maxim that, "[b]ecause default judgment is a harsh sanction involving a court's power to enter and enforce judgments regardless of the merits of a case, courts do not favor such a sanction purely as a penalty for delays in filing or other procedural error." Noland v. City of Albuquerque, 2009 WL 2424591, at *1 (internal quotation marks omitted). In particular, the Court notes that, given this maxim:

> [S]trong policies favor resolution of disputes on their merits: the default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights. The default judgment remedy serves as such a protection.

In re Rains, 946 F.2d at 732-33 (citations and internal quotation marks omitted). See Noland v. City of Albuquerque, 2009 WL 2124591, at *1 (denying motion for default judgment, because the counsel for defendant, City of Albuquerque, "entered an appearance three days after Noland filed his motion for default judgment," and, thus, the Court could not "reasonably say that the City of Albuquerque is an essentially unresponsive party, that the adversary process has been halted, or that Noland faces interminable delay because of the City of Albuquerque's actions").

Here, Bucag has averred before the Court that, after he was served, on September 13, 2016, he "contacted his former supervisor at CYFD and emailed her a copy of the Summons. It was [his] understanding that his former supervisor would send the Summons to CYFD attorneys, and that the matter would be handled," and he should wait for the CYFD attorneys to contact him. Motion to Set Aside at 2 (citing Mayfritz Decl. at 1-2). Having not heard from the CYFD attorneys for some time after Bucag made contact with his former supervisor, Bucag thought it wise to Google search his name, upon which he discovered the Clerk's Entry of Default against him in this case. See Motion to Set Aside at 2 (citing Mayfritz Decl. at 1-2). Bucag then promptly contacted again his former supervisor and alerted the supervisor to the Clerk's Entry of Default, and, shortly thereafter, Bucag received a call from CYFD attorneys on December 9, 2016, who then began earnest litigation on his behalf on December 12, 2016. See Motion to Set Aside at 2 (citing Mayfritz Decl. at 1-2). Under the guidance of Pinson v. Equifax Credit Info. Servs., the Court cannot soundly conclude that the aforementioned procedural history of Bucag's involvement in this case is comparable to a "willful default." Pinson v. Equifax Credit Info.

Servs., 316 F. App'x at 749. See Noland v. City of Albuquerque, 2009 WL 2124591, at *1.

Instead, Bucag was the victim of his employer's confusion as to the nature of his representation, as Bucag indeed proffered for the Court at the hearing:

> CYFD effectively assigned counsel to Ceballes in this case, and then "they looked on the computer somewhere saw counsel had been assigned not realizing it had only been assigned for defendant Ceballes. I don't know that for sure but that would be my best guess as to what happened since there was counsel that did enter an appearance, it would be shown up in Risk Management that there was someone representing Risk Management. There was just a mistake not realizing there were two Risk Management defendants.

Tr. at 10:6-14 (Williams). Although the Court considers that there may have been opportunities for Bucag to retain private counsel, or perhaps be more active in his request of CYFD for representation, see Tr. at 17:10-25 (Court), the Court is hard pressed to conclude that Bucag's prompt contact of his supervisor and subsequent expectation that CYFD would authorize counsel in the fashion his supervisor had indicated, can appropriately be considered a "willful default" in these circumstances, Pinson v. Equifax Credit Info. Servs., 316 F. App'x at 749. Further, it was Bucag's monitoring of his case that led to his discovery of CYFD's failure in representation, and it was Bucag who contacted his supervisor to alert CYFD to the Clerk's Entry of Default, which suggests to the Court that Bucag had every intention of being an active participant in this case. See Tr. at 17:10-25 (Court).

The Court also notes that counsel represented Bucag's co-Defendant in this case, Wilder, and timely answered in contradiction to the allegations in Payne's Complaint. See Response at 3-4. The Court considers this fact suggestive of a lack of prejudice to Payne, because Bucag's involvement does not put Payne in a position where she is dealing with surprise or unexpected arguments and defenses. Further, the Court notes that Payne has made only one assertion of prejudice: "going through the default process here in Federal Court is a little more onerous than

state court." Tr. at 4:12-15 (Garcia). The Court is not persuaded, however, that the unsuccessful result of Payne's routine default-related litigation in this case constitutes prejudice which is sufficiently comparable to the prejudice to Bucag by the potential entry of default judgment against him. Bucag has also stipulated that any deposition he must undertake would occur in New Mexico, as opposed to his residence in Seattle, lessening the further potential for financial hardship and prejudice to Payne in the course of normal discovery. See Tr. at 15:23-24, 16:11-16 (Williams, Court)(during which Bucag's attorney indicated she would "fly him down here to assist in continuing to move this case forward"). Under Pinson v. Equifax Credit Info. Servs.'s prejudice factor, then, the Court concludes that Payne has not persuaded it of any sufficient prejudice to deny Bucag's Motion to Set Aside. See 316 F. App'x at 749. Any prejudice from filing documents associated with this default and default judgment issue is likely well offset with the reduction in trial costs associated with Bucag's deposition.

The Court also considers reference to the high standards appurtenant to entering a default judgment to bolster its conclusion regarding prejudice to Payne. To enter a default judgment, the Court must give heavy weight in its analysis whether "the adversary process has been halted because of an essentially unresponsive party[, because i]n that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights. The default judgment remedy serves as such a protection." In re Rains, 946 F.2d at 732-33 (citations and internal quotation marks omitted). See Noland v. City of Albuquerque, 2009 WL 2124591, at *1 (denying motion for default judgment, because the counsel for the defendant, City of Albuquerque, "entered an appearance three days after Noland filed his motion for default judgment," and, thus, the Court could not "reasonably say that the City of Albuquerque is an essentially unresponsive party, that the adversary process has been halted, or that Noland faces

interminable delay because of the City of Albuquerque's actions").  Here, as described, Bucag cannot reasonably be said to have willingly, deliberately halted the adversarial process and caused a prejudicial delay to Payne.  See Noland v. City of Albuquerque, 2009 WL 2124591, at *1.  Bucag was responsive -- in a manner that was, indeed, ultimately unsuccessful, but also reasonable and appropriate given his former employment with CYFD -- and did not cause wholly prejudicial delay to Payne, particularly because of the active involvement of Wilder and Ceballes.  See Noland v. City of Albuquerque, 2009 WL 2124591, at *1.

In sum, in its application to Bucag's Motion to Set Aside those two factors -- whether the default was willful and whether setting it aside would prejudice the adversary -- the Court concludes the analysis is favorable to Bucag's arguments seeking to set aside the Clerk's Entry of Default, and the Court will therefore find good cause to set aside the Clerk's Entry of Default. Further, the Court cannot reasonably conclude that the high standard for entering default judgment is apparent on these facts.  In this case, then, the Court concludes that, by reference to the factors, good cause exists to set aside the Clerk's Entry of Default, because the circumstances do not demand the imposition of the harsh default judgment sanction.  The Court's balance of the relevant considerations suggests that the Clerk's Entry of Default ought to be set aside so that the parties may reach a resolution on the merits of their dispute.

**IT IS ORDERED** that: (i) the Plaintiff's Motion for Default Judgment, filed November 29, 2016 (Doc. 26), is denied; and (ii) Defendant Mayfritz Bucag's Motion to Set aside Entry of Default, filed December 29, 2016 (Doc. 35), is granted.  The Court will set aside the Clerk's Entry of Default, filed November 16, 2016 (Doc. 22), and allow Defendant Mayfritz Bucag to participate in this case free of default judgment against him.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Miguel Garcia
John R. Hakanson, P.C.
Alamogordo, New Mexico

    *Attorneys for the Plaintiff*

Damian L. Martinez
Holt Mynatt Martinez, P.C.
Las Cruces, New Mexico

    *Attorneys for Defendant Lee Wilder*

Lee M. Rogers
Carla Neush Williams
Atwood, Malone, Turner, & Sabin, P.A.
Roswell, New Mexico

    *Attorneys for Defendants David Ceballes and Mayfritz Bucag*